**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| KENT FORD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY WISEMAN, individually; WISEMAN MINISTRIES INC., d/b/a ISAIAH 58 FARMS, HOUSE OF DISCIPLES, WISEMAN LIFE RECOVERY, AND GIFTS OF GRACE RESALE STORE; WISEMAN TRANSPORT LLC, and JOHN DOES 1-10,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:25-CV-00982-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint Under Rule 12(b)(1) and 12(b)(6) (the "Motion") filed by Defendants Timothy Wiseman, Wiseman Ministries, Inc., and Wiseman Transport LLC. (Dkt. No. 42). In the Motion, Defendants seek to dismiss Plaintiff Kent Ford's First Amended Complaint ("FAC") pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*Id.* at 1).

## I. BACKGROUND

Plaintiff Kent Ford ("Ford") is an individual residing in Texas. (Dkt. No. 40 at ¶ 1). Defendant Timothy Wiseman ("Wiseman") is the owner of Defendant Wiseman Ministries Inc. ("Wiseman Ministries"), and Defendant Wiseman Transport LLC ("Wiseman Transport"). (collectively, "Defendants") (*Id.* at ¶ 7). Wiseman Ministries is a Texas nonprofit corporation that operates as a faith-based recovery program under several assumed names, including Isaiah 58 Farms. (*Id.* at ¶ 8). In late 2024, a Texas state court in Harrison County court ordered Ford to

participate in the Wiseman Ministries' recovery program at Isaiah 58 Farms as a condition of Ford's probation. (*Id.* at ¶ 1). Ford remained in the program for eight months. (*Id.*). Ford filed his Original Complaint in the above-captioned case on September 30, 2025. (*See* Dkt. No. 1). Ford subsequently filed his First Amended Complaint on February 11, 2026. (*See* Dkt. No. 40). Ford alleges that Defendants, individually and as an enterprise, violated federal and Texas wage-and-hour laws, unlawfully confiscated benefits, misrepresented program services, and retaliated against program participants. (*Id.* at ¶¶ 6–13, 17–22). Defendants now move to dismiss Ford's FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. (Dkt. No. 42).

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 66, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" where the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In the Fifth Circuit, Rule 12(b)(6) motions are "viewed with disfavor" and "rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). For such motions, the court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019). However, the Court should "not credit a complaint's legal conclusions or threadbare recitals of the

elements of a cause of action." *Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted).

**B. Federal Rule of Civil Procedure 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the Court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proving its existence. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). A case is properly dismissed under Rule 12(b)(1) when the Court lacks the statutory or constitutional power to adjudicate the case. *CLEANCOALITION v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (citing *Home Builders Ass'n of Miss., Inc. v. Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). In deciding a Rule 12(b)(1) motion, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

**III. ANALYSIS**

Defendants moved to dismiss Plaintiff's First Amended Complaint (the "Motion") on February 25, 2026. (*See* Dkt. No. 42). In the Motion, Defendants assert dismissal is warranted as to Counts I-IV and VI-VII of Ford's FAC, as well as with regard to Ford's class and collective allegations. (Dkt. No. 42 at 3–4). The Court takes up each argument in turn.

**A. FLSA Minimum Wage/Overtime (Count I)**

Defendants first assert that Plaintiff's FLSA Minimum Wage and Overtime claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to adequately allege that: (1) there existed an employer-employee relationship between Plaintiff and

Defendants; and (2) the Defendants violated the FLSA's minimum wage or overtime wage requirements and the amount of overtime owed by Defendants. (Dkt. No. 42 at 5–10).

**1. Employer/Employee Status**

The Fair Labor Standards Act of 1983 "created a comprehensive federal wage-and-hour scheme" for the purpose of "protect[ing] all covered workers from substandard wages and oppressive work hours." *Klick v. Cenikor Found.*, 94 F.4th 362, 368 (5th Cir. 2024) (quoting *Aldridge v. Mississippi Dep't of Corr.*, 990 F.3d 868, 871 (5th Cir. 2021)). Thus, the FLSA only protects employees. *Id.* (quoting *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021)).

Ford bears the burden of establishing that he was an employee of the Defendants pursuant to the FLSA. *Moctezuma v. Islas*, No. 418CV00342ALMCAN, 2019 WL 2308002, at *3 (E.D. Tex. Apr. 26, 2019), *report and recommendation adopted*, No. 4:18-CV-342, 2019 WL 2302712 (E.D. Tex. May 30, 2019). While employee status is a question of law, the question often turns on factual inquiries based on the "economic reality" of the relationship between the parties and requires an evaluation of the totality of the circumstances. *Klick*, 94 F.4th at 369, 372.

Pursuant to Fifth Circuit precedent, the primary beneficiary test is the appropriate framework for determining whether a rehabilitation patient qualifies as an employee for the purposes of an FLSA claim. *Id*. at 372. This framework involves a consideration of non-exhaustive factors, including the plaintiff's expectation of compensation, therapeutic value of the rehabilitative program, whether the relationship displaces paid employees, and "any other considerations that may 'shed light on which party primarily benefits from the relationship.'" *Id*. (quoting *Eberline v. Douglas J. Holdings, Inc.*, 982 F.3d 1006, 1013 (6th Cir. 2020)).

Pursuant to *Klick*, Ford has sufficiently plead facts which plausibly establish his employee status for the purpose of surviving this motion to dismiss. In his First Amended Complaint, Ford alleges that Wiseman Ministries "suppl[ies] a captive labor force to Wiseman-controlled nonprofit and for-profit enterprises," and that "yearly incomes" of the Defendants "exceeded several millions of dollars." (Dkt. No. 40 at ¶¶ 8–9). Ford further alleges that program participants "routinely work forty (40) or more hours per week" at various Wiseman Ministries entities. (*Id*. at ¶ 10). All participants were required to surrender any tips and received only "nominal 'points' or credits" rather than wages for their work. (*Id*.). These points or credits may be used to purchase goods from Defendants' stores. (*Id.* at ¶ 32). Further, Defendants required program participants like Ford to surrender, pool, or otherwise relinquish their SNAP benefits to Defendants for "program use." (*Id*. at ¶ 11). As alleged, such facts allow the Court to properly determine that Defendants primarily benefited from their relationship with Ford. Under *Klick*, this makes Ford an employee of Defendants for the purposes of the FLSA. *See Klick*, 94 F.4th at 369–72. Thus, the Court finds that Ford alleges sufficient facts to plausibly allege that Ford was an employee of Defendants.

While Defendants argue that Ford's Amended Complaint fails to address all of the *Klick* factors, such factors are "[n]on-exhaustive" and require "a careful evaluation of the totality of the circumstances." *Klick*, 94 F.4th at 372. It is not necessary that Ford plead facts to support all the *Klick* factors at the motion to dismiss phase.

To succeed on a FLSA claim, a plaintiff must also establish that the defendant is a an 'employer' for the purposes of the FLSA. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984). Defendants argue that Ford fails to adequately allege that Defendant Tim Wiseman and Defendant Wiseman Transport were employers under the FLSA. (Dkt. No. 42 at 8–9).

In the Fifth Circuit, courts apply the economic realities test to determine whether a defendant is an employer. *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012). Specifically, courts consider whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 355. Where there is more than one alleged employer, the court must apply this four-factor test to all alleged employers individually. *See id*.

Ford sufficiently alleges Defendant Wiseman was his employer. Ford pleads that Wiseman directs program operations, assigns participants to worksites, enforces the points pay system, controls participant discipline, and compels the pooling of SNAP benefits at program facilities. (Dkt. No. 40 at ¶¶ 7, 19, 23). The Court is satisfied that such allegations implicate at least the first three factors under the economic realities test. The Court finds this is sufficient to plausibly allege Wiseman's as employer status as to Ford.

Ford relies on either a "joint employer" or "single enterprise" theory to support the contention that Wiseman Transport qualifies as an employer pursuant to the FLSA. (*See* Dkt. No. 59 at 7). Ford alleges that Wiseman Transport is a for-profit entity, owned and controlled by Wiseman. (Dkt. No. 40 at ¶¶ 4, 7). Ford further alleges that Defendants profit collectively through commercial farming, wood-products mill operations, product sales and distributions, and other services all powered by "participant labor under common management and control." *Id*. at ¶ 12. Ford essentially argues that Wiseman Transport qualifies as an employer either because it is a part of a single enterprise with Wiseman or because it acts as an employer jointly with Wiseman. Defendants argue that Ford's allegations are conclusory and fail to address the economic realities test. (Dkt. No. 42 at 10).

The Court finds that, taking all reasonable inferences in favor of Ford, Ford has alleged sufficient facts to support employer status as to both Wiseman and Wiseman Transport at the motion to dismiss stage.

**2. Overtime Allegations**

To state a prima facie claim for overtime-pay under the FLSA, a plaintiff must plausibly allege: "(1) that an employer-employee relationship existed during the time that she worked in excess of forty hours per week; (2) that she engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 309 (5th Cir. 2021). Defendants argue that Ford failed to sufficiently allege a violation of the overtime-wage requirements and the amount of overtime due. (Dkt. No. 42 at 7–8).

The Court finds that Ford has sufficiently plead facts alleging violation of the overtime-wage requirements and the amount of overtime payment due. Specifically, Plaintiff alleges that he participated in Defendants' program from November of 2024 until July of 2025 and that program participants like Ford "routinely work forty (40) hours or more per week…receive only nominal 'points' or credits…and they are not paid overtime compensation." (Dkt. No. 40 at ¶¶ 1, 10, 31). While brief, Ford's allegations are sufficient to state a plausible claim under the FLSA. *See White*, 996 F.3d at 309–10 (finding that Plaintiff plausibly plead a claim for overtime-pay under the FLSA where Plaintiff pled the years of her employment, that she "regularly" worked in excess of forty hours per week, and that she was not paid the proper overtime rate in violation of the FLSA).

Based on these asserted facts and making all reasonable inferences in favor of Ford as the non-movant, the Court finds that Ford has sufficiently pled an FLSA claim for overtime wages against Defendants Wiseman and Wiseman Transport. Accordingly, Defendants' Motion to

Dismiss is hereby **DENIED** as to Ford's FLSA wage claim against Wiseman and Wiseman Transport.

**B. FLSA Retaliation (Count II)**

To state a claim for retaliation under the FLSA, a plaintiff must demonstrate: (1) participation in an activity protected by the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *Potter v. Cardinal Health 200, LLC*, 381 F. Supp. 3d 729, 739 (E.D. Tex. 2019) (*quoting Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008)).

Defendants argue that Ford failed to allege a protected activity sufficient to state a claim for retaliation. (Dkt. No. 42 at 10). Specifically, Defendants argue that Ford's allegation that Defendants retaliated against him for refusing to sign a statement related to a workplace injury investigation is not a protected activity under the FLSA. (*Id.*). In his FAC, Ford alleges that he refused to sign a statement for the purposes of an OSHA workplace investigation and that the Defendants retaliated against him for this action by reporting to his probation officer that he had violated their program rules. (Dkt. No. 40 ¶ 38). Ford argues that "internal complaints asserting rights under the FLSA can qualify as protected activity." (Dkt. No. 59 at 8).

The Court finds that Ford's factual allegations sufficiently allege a protected activity to survive a motion to dismiss. Accordingly, Defendants' Motion to Dismiss as to Ford's individual retaliation claim is **DENIED**.

**C. Texas Minimum Wage Act (Count III)**

Defendants argue that Ford's TMWA claim should be dismissed for (1) failure to verify the complaint pursuant to the TMWA's verification requirement; (2) lack of factual specificity to state

a plausible claim; and (3) incompatibility between Federal Rule of Civil Procedure 23 and the TMWA statutory framework.

First, the Court finds that Ford's failure to verify the First Amended Complaint is a state law procedural defect requiring dismissal without prejudice and leave to amend. However, the Court is not determining at this juncture whether the statutory verification requirement contained in Texas Labor Code § 62.204(3) applies to a TMWA claim brought in federal court pursuant to federal question jurisdiction.

Second, the Court finds that Ford has come forward with sufficiently particularized facts to state a claim for relief under the TMWA. Defendants argue that, under Texas law, Ford was required to plead certain elements. (Dkt. No. 42 at 12). However, Defendants only cite two cases to support this proposition. *Id*. The first is a District of Arizona case, and the court there did not have a TMWA claim before it.[1] *Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2014 WL 3385116 (D. Ariz. July 10, 2014). The District of Arizona is not a binding precedent on this Court. The second case was also improperly cited. The Court is not bound to search for cases a party does not accurately cite. Accordingly, Defendants' arguments in this regard are insufficient.

Finally, the apparent incompatibility between the opt-out mechanism in Federal Rule of Civil Procedure 23 for class actions and Texas Labor Code § 62.203 does not warrant dismissal of Ford's class and individual TMWA claims. Defendants include only a conclusory, one-sentence explanation on this incompatibility. The Court is not satisfied, at this early procedural stage, the asserted statutory incompatibility should act as a total bar to Ford's intended relief.

---

[1] Defendants' actual citation as found in their brief was "*See Montoya v. 3PD, Inc.*, No. SA-13-CV-01092-DAE, 2014 WL 3385113, at *4 (W.D. Tex. July 10, 2014)." (Dkt. No. 42 at 12). This citation was so flawed that the Court was forced to guess as to which case Defendants intended. The Court will not condone such sub-par briefing by accepting the responsibility to search for erroneously cited authorities.

Accordingly, Defendants' Motion to Dismiss Ford's TMWA claim is **GRANTED WITHOUT PREJUDICE**. The Court further **GRANTS** Ford leave to amend and/or supplement his First Amended Complaint to address the lack of verification within fourteen (14) days of this Order.

**D. Texas Payday Law (Count IV)**

Defendants next argue that Ford fails to state a claim under the Texas Payday Law. Specifically, Defendants argue that Ford failed to adequately allege facts that would tend to establish each element of a Texas Payday Law claim. (Dkt. No. 42 at 12). However, Defendants do not cite any case law, nor the underlying statute itself to support their proposition regarding the elements of a Texas Payday Law claim. *Id*.

On the other hand, Ford asserts that his First Amended Complaint adequately alleges that "Defendants failed to pay earned wages in full and on time, conditioned any cash redemption of earned 'points' on program completion and Defendants' approval, and confiscated cash tips earned at the Soapy King car wash and the Gifts of Grace stores." (Dkt. No. 59 at 9–10). Ford asserts that these facts are sufficient to give Defendants fair notice of unpaid earned wages and unlawful deductions. *Id*. at 10.

The Court agrees with Plaintiff's position. Accordingly, Defendants' Motion to Dismiss Ford's Texas Payday Law claim is **DENIED**.

**E. The Texas DTPA (Count VI)**

Defendants argue Ford cannot state a claim for relief under the Texas Deceptive Trade Practices Act ("DTPA") because Ford cannot qualify as a "consumer" as required to recover under the Act. To qualify as a consumer, the Plaintiff must (1) seek or acquire goods or services by purchase or lease, and (2) those goods or services must form the basis of the complaint. *Coleman*

*v. Sw. Stage Funding, LLC*, No. 1:23-CV-00080-MJT, 2024 WL 1186895, at *3 (E.D. Tex. Mar. 1, 2024), *report and recommendation adopted*, No. 1:23-CV-00080-MJT, 2024 WL 1179789 (E.D. Tex. Mar. 19, 2024). Defendants do not apparently dispute element two. (Dkt. No. 42 at 13). Rather, Defendants argue that because Ford received "free services through a nonprofit rehabilitative program," Ford could not have purchased or leased any goods or services from any Defendant. *See id*.

Ford counters that consumer status is a fact-bound inquiry. (Dkt. No. 59 at 10). Further, Ford argues that he sought and acquired the program's promised rehabilitative services (including housing, recovery, and training) in exchange for surrendering his labor and SNAP benefits is sufficient to survive dismissal at this stage. *See id*. Construing Ford's allegation in the light most favorable to him, these allegations are sufficient to deny Defendants' assertion that Ford was not a consumer pursuant to the DTPA.

Accordingly, Defendants' Motion to Dismiss Ford's claim under the DTPA is **DENIED**.

**F. Conversion (Count VII)**

As for Ford's conversion claim, Defendants argue that Ford has only alleged conversion as to intangible property not subject to conversion claims under Texas law. (Dkt. No. 42 at 14). Conversion requires an "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Texas state and federal courts also agree that conversion applies only to tangible property, not intangible property, except where intangible property is represented by a physical document (for example, a stock certificate). *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 777–78 (S.D. Tex. 2010).

Ford argues that confiscation of cash tips and SNAP/EBT benefits "seized and pooled" by Defendants are specific, identifiable funds that are subject to conversion. (Dkt. No. 59 at 11). Specifically, in his First Amended Complaint, Ford alleges that SNAP benefits and EBT cards are surrendered, pooled, or relinquished to Defendants. (Dkt. No. 40 at ¶ 34).

The Court agrees with Ford that, making all reasonable inferences in favor of Ford, the First Amended Complaint sufficiently alleges tangible property subject to conversion in the form of cash tips, SNAP benefits, and physical EBT cards. Accordingly, Defendants' Motion to Dismiss Ford's conversion claims is **DENIED**.

### G. Class and Collective Action Allegations

Ford brings his FLSA overtime/wage and retaliation claims individually and as collective actions under 29 U.S.C § 216(b). (Dkt. No. 40 ¶ 40). Ford also brings individual and class allegations pursuant to Federal Rule of Civil Procedure 23 as to his claims under the TMWA, Texas Payday Law, and DTPA, as well as for his claims of unjust enrichment and conversion. (Dkt. No. 40 ¶¶ 41).

Defendants argue that Ford's Rule 23 class allegations should be dismissed pursuant to Rule 12(b)(1) because Ford lacks standing to assert them. (Dkt. No. 42 at 14). Defendants further argue that Ford's Rule 23(b)(2) class claims should be dismissed pursuant to Rule 12(b)(6) because Ford's claims for individual monetary relief as well as the individualized nature of the claims prevent certification. (*Id*. at 16–18). Finally, Defendants argue that Ford's FLSA retaliation claims are not suitable for collective treatment and should be dismissed pursuant to Rule 12(b)(6) because "courts have consistently held FLSA retaliation claims are inherently individualized and not appropriate for collective treatment." (*Id*. at 10).

Ford counters that Defendants' Rule 23 and standing challenges are premature and are more appropriately addressed at the certification stage. (Dkt. No. 59 at 12–13). Ford similarly argues as to his collective FLSA retaliation claim that dismissal at this stage is premature and that Defendants' arguments are a "Rule 216(b) case-management question" to be decided on a more developed record. (*Id*. at 8–9)

The Court agrees with Ford that his class and collective allegations are more properly taken up on a developed record at the certification phase, and that dismissal at this stage is premature. Accordingly, Defendants' Motion to Dismiss Ford's class and collective action claims is **DENIED WITHOUT PREJUDICE**.[2]

## IV. CONCLUSION

As set forth herein, Defendants' Motion to Dismiss is **DENIED-IN-PART** and **GRANTED-IN-PART**.

**So ORDERED and SIGNED this 25th day of September, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

[2] The Court further finds that Defendants' arguments regarding the same may be properly raised later upon Ford's request for certification of the class and collective.